# C A S E S

DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1822.

———————◆———————

THE PRESIDENT AND DIRECTORS OF CUMBERLAND BANK
*against* WILLIAM HALL.

1. The law does not presume that an alteration, apparent on the face of a note, was made after its execution.

2. But whether the alteration was after or before the execution of the note, appears to be a question for the jury to decide.

————

This was an action of assumpsit brought by the President and Directors of Cumberland Bank, as endorsees of a promissory note, against William Hall, the drawer, and was tried before his honor, Justice Rossell, at the Cumberland circuit, in June, 1820. The facts, as they occurred at the trial, appeared by the state of the case agreed upon by the attorneys, to be these. " The plaintiffs proved the execution of the note and the endorsement, as mentioned in the declaration, and read the note in evidence, without objection, and then rested."

The note appeared to have been drawn payable "to Clement Acton and Hedge Thompson, or their order," and was endorsed by Clement Acton and Hedge Thompson, but the words "and Hedge Thompson," on the face of the note, was erased, so that the note read, "I promise to pay to Clement Acton, or to *their* order," &c.

The defendant offered to prove the declarations of Hedge Thompson, the last endorser, made after the commencement of this suit, that the name of Hedge Thompson, in the note, had been erased after the endorsement of the note by him; which evidence was objected to by the plaintiff's counsel, but was admitted by the court. The court then charged the jury, that the plaintiffs were bound to account for the alteration, and, unless it was shewn to have been made before the execution of the note, that the law presumed it to have been done afterwards. To this charge the counsel for the plaintiffs excepted.

A verdict was rendered, under the charge of the court, for the defendant, with leave to the plaintiffs to move for a new trial; and, if refused, to submit to judgment, as in case of a non-suit.

At February term last, *Ewing* for the plaintiffs, moved to set the verdict aside, and for a new trial. He contended—1. That declarations of Thompson were inadmissible as evidence. Either Thompson was interested in the event of the suit, or he was not. If interested, his declarations were certainly inadmissible; if not interested, then his declarations were incompetent, for they were no more than the declarations of a third person, not under oath. 2. The charge of the judge was incorrect; the presumption of law was, that the alteration or erasure apparent on the face of the note, was made before its execution, and not that it was made after. The principle of law was well settled, that the *jury* were to decide whether the alteration was made before or after the execution of the instrument. *Coke Lit.* 225, *b.*

13, *Vin. Abr.* 38 *pl. Shep. Touch.* 69; 10 *Co. Rep.* 92; 2 *Dal.* 306. But if the presumption was, that the alteration was made after the execution of the instrument, then there could be nothing for the jury to decide upon. This shews that the mere circumstance of the alteration appearing on the instrument does not make it void; for if it did the court would so decide, and there would be nothing left to the jury. But the true doctrine is, that unless the alteration is shewn to have been made after, the law presumes it to have been made before. *Wood's Inst.* 3d edit. 296; 1 *Swift's Syst.* 310; 12 *Vin.* 58, *pl.* 5; 13 *Ib.* 41. An interlineation will be presumed to have been made at the time of making the deed, and not after. 3 *Cru. Dig. title Deed, chap.* 22; 2 *John. Ca.* 198. The same doctrine is held, in substance, in 2 *South.* 737. This was not only the rule of law, but reason, for fraud or guilt was never to be presumed. 3. The verdict was against evidence, because the jury, having found for the defendant, must have found that the alteration was made after the execution of the note, when there was no evidence before them to that effect.

*Jeffers,* in answer. The plaintiff moves for a new trial on three distinct grounds. 1. It is said, his honor the judge, who tried the cause, admitted unlawful testimony. 2. Because the charge was against law. 3. The verdict is said to be against law and evidence.

I. The plaintiffs, at the trial, offered in evidence a promissory note, having proved the hand-writing of the maker and endorsers. On the production of this note, it appeared upon the face of it, that the name of one of the original payees had been erased. This erasure avoids the promissory note. The presumption of the law, with respect to deeds, is, that the erasure was made *after* delivery, unless the contrary appears by a note of the erasure made before execution, or by other evidence. 1 *Dal.* 67; 3 *Dyer* 261–6; *Gil. Evi.* 92, 93; 3 *Com. Dig. title Fail,* 334 *F.* 1; 1 *Shep. Touch.* 68; 4 *Cranch* 60.

II. This rule of law applies as well to promissory notes and bills of exchange as to deeds. 2 *H. Black. Rep.* 141, *Masters* v. *Miller*; 4 *Term Rep.* 320; 5 *Ib.* 467; 1 *Anst.* 228; 1 *Selwyn* 268; *Decision of Supreme Court, February term*, 1820.

The reason of the law applies with full force in this case. This is not the *same instrument,* it is not the *same contract,* which the defendant originally made. If the holder of a note can alter the name of one payee, why not both, and make it payable to a stranger. Suppose they had erased the name of both payees, and made the note payable to the bank at once, or to some officer of the bank, will it be contended, the amount could be recovered of the maker? There must be a privity of contract, as well as a consideration. The defendant is made debtor to one without his consent or knowledge, and without a pretence of consideration. Clement Acton never transferred this note to Thompson; he could only transfer his right; nor had Thompson power to transfer it to the bank.

It is no argument to say, the defendant must have paid the note without the alteration. It is not so much for the defendant that he is exonerated, as it is for the principles of law and sound policy. "The reason of the rule, that a material alteration shall vitiate a deed, is applicable to all written instruments, and particularly to promissory notes, which are of universal use in the transactions of mankind." But the defendant may have given the note to Acton and Thompson in payment of an account, which account would not be discharged by payment of this note, now payable to Acton alone. He may have had an offset, which would be good against Acton and Thompson jointly, and not be good against either of them individually.

III. It is a question of law for the court to determine, whether the instrument is void by erasure? and if referred to the jury, under the direction of the court, the jury are bound by law to find the alteration to have been *after,* unless the plaintiff can shew it was made before, delivery.

But it is said, the jury are to determine, as a *distinct fact*, whether the erasure was made *before* or *after* the delivery. They have here expressly found it to be *after*. The court charged the jury upon the law, and left the fact for their consideration. This, therefore, is not a verdict against law, and certainly not against evidence, since the only evidence of the plaintiff was this altered, and consequently void, instrument. And I am yet to be informed wherein " *the charge of the court was illegal.*"

IV. The evidence of the declarations of Thompson were clearly admissible. 7 *Term Rep.* 601. They went to shew what, indeed, it was not necessary to prove, *viz :* that the alteration was. made after delivery. This evidence could not affect the rights of the plaintiffs ; their case was gone without the introduction of *any evidence* by the defendant. If the testimony, therefore, had been unduly admitted, the court would not grant a new trial. When the case is clearly with the defendant, putting his evidence out of the question, there is nothing to warrant a recovery ; hence, nothing to warrant a new trial. If I am correct as to the law, what would a new trial avail the plaintiffs ? It would only bring up the same question again, and receive the same determination. If the verdict is right, it is to no purpose to grant a new trial. 3 *Bur.* 1256.

*L. H. Stockton,* on same side. This case may be considered in two points of view, in respect to the law, and in respect to the fact. I shall first shew, that if the fact warrants the conclusion that the name of Thompson was erased after the execution of the note, and without the consent of the .defendant, that it will avoid the note ; and herein I shall shew—1. That it is so material as to be of the. very essence of the thing, and creates in the defendant a right of defence to the suit founded, not only on the strictness of technical right, but on the clear principles of justice. 2 *Jac. L. D.* 224; 3 *Cruise* 388, *Pigot's case;* 11 *Coke's Rep.*

27 ; 2 *Black. Com.* 308–9. These cases shew the rule as to
deeds. As to bills of exchange and promissory notes, the
law is the same. 4 *Term Rep., Master* v. *Miller.* This
case was affirmed in the exchequer chamber. 5 *Term. Rep.*
367. Now, when a man gives an instrument to *two* jointly,
and that instrument is altered after its execution, so as to
shew on the face of it that it was given to *one*, the instru-
ment produced is not the same as that declared on ; and
this alteration gives the defendant, not merely in techni-
cality, but in common sense and justice, a good defence. It
can hardly be questioned, but what the release of one of
two joint drawees of a note would discharge the drawer.
Suppose this note given to Clement Acton and Hedge
Thompson had been the same day, and before endorsement,
released by Thompson to the defendant, will any man say,
that the bank could sustain a suit upon it ? Surely not,
because the note would have been destroyed by the release
before it came into the hands of the endorsee, the bank.
Again, suppose before endorsement he had paid it to Thomp-
son, could he not plead such payment in bar ? Surely he
could. Again, even without express release or payment,
the defendant, on the assignment of his note to the bank,
considering it as being a joint note, might have thereon
many rights, both legal and equitable, as against Thompson,
of which he would necessarily be divested, if the joint note,
subsequent to its execution, could, without his assent, be
converted, in the hands of the endorsees, into a separate
note, vesting the exclusive interest in another. It is there-
fore plain, that if the fact be that this erasure was made
after the execution of the note, and without the assent of
the defendant, that he has clear justice, as well as evident
law, to support his defence. This general, most important,
and fundamental proposition being established, let us inquire
into the facts, and see whether they were established at the
Circuit ; and that they were shewn and proved to the satis-
faction of the jury, is clear from the report of the case, and

by the verdict of the jury. And the point on which the debate is to turn is—1. Whether this proof before the jury, of the declarations of Thompson, was lawfully or unlawfully admitted by the judge? and, 2. Whether the charge attributed to the judge was lawful?

1. The declarations of Thompson were admissible, because they were the declarations of a party adverse, the declarations of one under whom the party claims, *viz.* an endorser. Now declarations, either of the party on the record, or of one under whom he claims, are clearly admissible. The facts proved by the declarations of Thompson were material facts, tending to develop a secret and fraudulent proceeding to the injury of the plaintiffs. It was a fact necessarily lying in the knowledge of Thompson. He could not be compelled to testify to it, because to compel him to any such testimony would be most directly to impugn that great privilege of the citizen, to be excused from answering any question which goes to criminate himself. Now, here the question proved by the declarations of Thompson was, that he, after the execution, had made the erasure. It was a fact which, under the statute, would amount to a misdemeanor, and he could not be compelled to answer it. If so, we, when we proved his declarations, we were within the clear general exception, and, in giving the evidence complained of, we produced the highest in our power, and of which the nature of the case was susceptible. *Gilb. Evi.* 15, 16, 17.

2. The charge of the judge was right. The plaintiffs were bound to account for the alteration of the note. The law is plain. 2 *Jac. L. D.* 224; 2 *Black. Com.* 308–9; 1 *Dal.* 67.

*Curia advisare vult.* And now at this term the court are of opinion, that the verdict must be set aside, and a new trial granted.